## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 11-14052-CIV-MARTINEZ/LYNCH

JOHN ZUCCARINI,                          )
                                         )
    Plaintiff,                           )
                                         )
    v.                                   )
                                         )
NETWORK SOLUTIONS, LLC,                  )
a Delaware Limited Liability Company;    )
NAMEJET, LLC,                            )
a Delaware Limited Liability Company;    )
INTERNET CORPORATION                     )
FOR ASSIGNED NAMES                       )
AND NUMBERS, INC.                        )
a California non-profit Corporation;     )
                                         )
    Defendants.                          )
_____ )

REC'D by _____ D.C.

**FEB 1 4 2011**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

### JURY TRIAL DEMANDED

## AMENDED COMPLAINT FOR NEGLIGENCE

    1.    Plaintiff, John Zuccarini ("Zuccarini") files this Complaint for Negligence against Defendants Network Solutions, LLC ("Network Solutions"), Name Jet, LLC ("NameJet") and the Internet Corporation for Assigned Names and Numbers, Inc. ("ICANN"). Zuccarini seeks compensatory and punitive damages.

    2.    Zuccarini brings this action as all Defendants behaved negligently and recklessly for allowing property, fourteen domain names co-held held by a California receiver and Network Solutions for the benefit of the beneficiaries of the receivership, Zuccarini and his creditors, to be transferred and placed in a series of Internet auctions conducted by NameJet in May of 2010 that were not authorized by the California District Court. Auctions from which Zuccarini and his creditors received little if any of the proceeds of the over $80,000 obtained through the auctions, with Network Solutions and NameJet themselves, becoming the primary beneficiaries of the

1

proceeds of the auctions.

3.      Network Solutions, knowing that the domain names were the subject of court proceedings, was particularly negligent for not placing the auctioned fourteen domain names on a legal hold, or some type of locked status, which Network Solutions does for many domain names that are the subject of legal actions. By doing so Network Solutions could have prevented the transfer and auctions of the domain names. The result of this negligent behavior by Network Solutions is that Zuccarini and his creditors have been deprived of more than $80,000 towards the amount of over $550,000 due Zuccarini and his creditors as established by the California receivership.

**JURISDICTION**

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332 (a), as this is a diversity action; the parties are citizens of different states, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

**VENUE**

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, as all Defendants conduct business in the State of Florida.

6.      Zuccarini emphasizes venue as it relates to Network Solutions. Zuccarini files this Complaint as a beneficiary of the receivership appointed by the California District Court in, *Office Depot, Inc. v. Zuccarini.* Zuccarini does not file this Complaint as a current or former registered domain name holder, or what could be referred to as a customer of Network Solutions, by which Network Solutions may claim venue in the Eastern District of Virginia due to a contractual forum clause.

7.      The fact that the domain names, the subject property of this action, were formerly

2

registered to Zuccarini before being transferred to the California receiver, is coincidental to this Complaint and not relevant to the arguments that are made.

8.     There are two other beneficiaries to California receivership, the Internal Revenue Service ("IRS") and DS Holdings, LLC. ("DSH"). At this time, neither has chosen to join this action, but both could join or file separate Complaints in making the same arguments as Zuccarini. That as beneficiaries of the receivership, the Defendants were negligent and reckless in their actions, the result of which was the unauthorized transfer and auction of fourteen domain names from which the beneficiaries received none, or little of the proceeds, contradicting the intended purpose of the creation of the California receivership.

9.     DSH would not be considered as a former customer of Network Solutions in any action towards the Network Solutions, and venue in such an instance would need not be in the Eastern District of Virginia, unless DSH chose. Zuccarini's status as it relates to venue is no different than what it would be for DSH.

## PARTIES

10.     The Plaintiff Zuccarini, is a citizen of Florida who resides in Martin County.

11.     Defendants, Network Solutions, NameJet, and ICANN are all Internet based Corporations whom conduct business online via the Internet throughout the United States and the world, and are doing business in this district.

12.     Defendant Network Solutions, a domain name registrar, is a Delaware limited liability company doing business in the State of Florida. Network Solutions corporate headquarters are located in Herndon, Virginia.

13.     Defendant NameJet, an Internet auctioneer of domain names, is a Delaware limited liability company doing business in the State of Florida. NameJet's corporate

3

headquarters are located in Bellevue, Washington.

14.     Defendant ICANN, manages and coordinates the Internet Domain Name System, in addition to accrediting domain name registrars. ICANN is a California non-profit corporation doing business in the State of Florida with it's corporate headquarters in Marina del Ray, California.

<b><u>RELATED ACTIONS</u></b>

15.     While this Complaint is related to two other previously decided Federal District Court actions, the arguments presented in this Complaint are entirely new and have never been presented by Zuccarini to a Federal District Court. The two related cases are, *Office Depot, Inc. v. Zuccarini, (06-80356) 488 F. Supp. 2d 920 - Dist. Court, ND California 2007,* and *Zuccarini v. Namejet, LLC, et al, (10-01327) Dist. Court, ED Virginia, 2010.*

16.     *Zuccarini v. Namejet, LLC,* was originally filed in The Southern District of Florida in July of 2010, but was transferred to The Eastern District of Virginia in December of 2010. The original case in the Southern District of Florida was *Zuccarini v. Namejet, LLC, et al, (10-14178) Dist. Court, SD Florida, 2010.*

17.     In *Office Depot, Inc. v. Zuccarini,* The District Court for the Northern District of California created a receivership for domain names previously registered to Zuccarini to be ultimately auctioned towards the payment of past due amounts owed to the Internal Revenue Service ("IRS") by Zuccarini and towards a judgment held by DS Holdings, LLC. ("DSH"), with any remaining funds distributed to Zuccarini.

18.     In *Zuccarini v. Namejet, LLC, et al,* Zuccarini challenged the terms of the California Court Order, in that Zuccarini believed it did not require certain domain name registrars to transfer Zuccarini's domain names to the receiver in *Office Depot, Inc. v. Zuccarini.*

4

19.     In *Zuccarini v. Namejet, LLC, et al,* Zuccarini also challenged the legality of NameJet's auctioning of fourteen domain names based on the same belief, that terms of the Court Order did not require the transfer of Zuccarini's domain names to the California Receiver. The Virginia District Court ruled the California Court Order did require the transfer of the domain names, and therefore the case in Virginia was dismissed.

20.     Network Solutions may attempt to argue the issue of their error in not protecting the domain names from a transfer unauthorized by the California District Court, which ultimately led to the auctions, was argued in *Office Depot, Inc. v. Zuccarini,* in the California District Court. Zuccarini has reviewed to best of his ability the court documents of *Office Depot, Inc. v. Zuccarini,* and has found no document that shows such arguments made by the beneficiaries of the California receivership. Zuccarini has also found no order or statement by the California District Court that relieved Network Solutions of the negligent behavior which Zuccarini alleges in this Complaint.

## STATEMENT OF FACTS

21.     ICANN, a California non-profit corporation that was created on September 18, 1998 is responsible for managing and coordinating the Domain Name System ("DNS") to ensure that every address is unique and that all users of the Internet can find all valid addresses. It does this by overseeing the distribution of unique IP addresses and domain names. It also ensures that each domain name maps to the correct IP address.

22.     ICANN is also responsible for accrediting the domain name registrars. "Accredit" means to identify and set minimum standards for the performance of registration functions, to recognize persons or entities meeting those standards, and to enter into an accreditation agreement that sets forth the rules and procedures applicable to provisions of Registrar Services.

23. ICANN's accreditation agreement gives ICANN the authority to terminate the the Registrar Accreditation Agreement with a particular domain name registrar at any time for certain circumstances defined in the Registrar Accreditation Agreement.

24. A consumer cannot directly register and manage their domain name information with ICANN. Instead, consumers must utilize a domain name registrar to have his or her domain registered and managed with the appropriate domain name registry.

25. Network Solutions is a domain name registrar accredited by ICANN.

26. Network Solutions has the authority and can at it's discretion place a domain name on "hold" status, when there is sufficient reason to do so. "Hold" status means a domain name cannot be transferred to another entity, and is not subject to transfer or loss from the current domain name holder, without consideration as to whether renewal fees have been paid or not been paid. "Hold" status is usually applied to a domain name by Network Solutions when the domain name is the subject of legal proceedings.

27. Network Solutions can also apply other various types of "lock" status platforms to domain names to prevent unauthorized transfers from occurring.

28. Zuccarini, beginning in the year 1998, registered a certain number of domain names with the domain name registrar Network Solutions. Zuccarini was identified as the domain name holder of those domain names.

29. In December of 2006, DS Holdings, LLC ("DSH") acquired by assignment a judgment in the amount of $100,000, in which Zuccarini was identified as the debtor. DSH through an action filed in District Court of The Northern District of California attempted to obtain the domain names that were registered in Zuccarini's name at Network Solutions and other domain name registrars to satisfy the amount of the assigned judgment.

30.     In an attempt to find legally valid method to obtain Zuccarini's domain names registered at Network Solutions, DSH attorney Karl Kronenberger ("Kronenberger") conducted specific communications with attorney Michael Mauseth ("Mauseth"), of the general counsels office of Network Solutions. In those communications Mauseth stated that Network Solutions would not directly transfer the domain names to DSH absent court order to do so, but if the California District Court appointed a receiver, Network Solutions would transfer Zuccarini's domain names registered at Network Solutions to the court appointed receiver, with the domain names to be later auctioned to satisfy the outstanding judgment. *Declaration of Karl Kronenberger in Support of DS Holdings' Application for Appointment of Receiver. (Exhibit A).*

31.     Subsequently the California District Court did appoint a receiver, and on November 14, 2007 issued an order that required Network Solutions and other domain name registrars to transfer Zuccarini's domain names to the appointed receiver.

32.     Network Solutions shortly after the November 14, 2007 Order transferred ninety domain names from Zuccarini as the registered domain name holder to that of the receiver, Michael Blacksburg ("Blacksburg"), as appointed by the California District Court.

33.     After the transfer of the domain names to the receiver Blacksburg, the IRS requested to intervene in the California District Court to state their claim as a judgment creditor, as Zuccarini owed a certain amount of back taxes to the IRS. The IRS demonstrated to the California District Court that it had first priority in the distribution of any funds obtained through the use or auction of the domain names while in possession of the receiver.

34.     The court appointed receiver, Blacksburg, while being the registered holder of the domain names until legal challenges to the transfer of the domain names initiated by Zuccarini were resolved, was holding the domain names for the ultimate benefit of Zuccarini and his

creditors, to satisfy Zuccarini's outstanding debts, not for himself.

35.    In May of 2010, Blacksburg through apparent error, did not renew the registration for fourteen of the ninety domain names transferred to him by Network Solutions, which needed to be done on a yearly basis in order for Blacksburg to maintain his status as the registered domain name holder of the fourteen domain names.

36.    The non re-registration of the fourteen domain names caused the domain names to proceed to an automated Internet auction process, through a mutual agreement Network Solutions maintains with NameJet.

37.    NameJet, in May of 2010 conducted a series of auctions on the Internet for the fourteen domain names in which consumers from around the world placed bids. The results of those auctions were that the fourteen domain names sold for an amount of over $80,000.

38.    As this auction was conducted through an automated process at NameJet as a result of the non renewal of the registration of the fourteen domain names, NameJet and Network Solutions through a service agreement with domain name holders claim they were entitled to keep the entire proceeds of the auctions. The registered domain name holder who did not re-register the domain names, was if certain procedures were correctly followed subsequent to the auctions, entitled to up to twenty percent of the auctioned price.

39.    Nine of the fourteen domain names sold at the NameJet auctions for a total of $77,959. Zuccarini has been at this time unable to determine the sale price for the remaining five domain names, but estimates it to be between $10,000 and $15,000. For a total estimated value for the fourteen domain names being sold for between $90,000 and $95,000. *(Exhibit B)*.

40.    The results of the auctions for the fourteen domain names is that Zuccarini and his creditors were deprived of over at least $80,000, towards the satisfaction of the debts over the

8

amount of $550,000 owed by Zuccarini as established in the California receivership.

### FIRST CAUSE OF ACTION
### NEGLIGENCE
#### (Against Defendant Network Solutions)

41.     Network Solutions knew at all times through the communications that were held between DSH attorney Kronenberger and Network Solutions attorney Mauseth, that the domain names which Network Solutions transferred to the California receiver Blacksburg were transferred specifically to be placed in a receivership for the benefit of Zuccarini and his creditors. That in essence Network Solutions by transferring the domain names to the receiver Blacksburg, had become a de facto co-holder in the receivership with Blacksburg, whether stated or not by the California Court.

42.     It was especially important, considering the domain names were being placed in a receivership for the benefit of parties other than that of the registered domain name holder, the receiver Blacksburg, that the integrity of Blacksburg's status as the domain name holder be maintained to insure there was not a transfer of the domain names away from Blacksburg's ownership, in order that Zuccarini and his creditors obtain the full financial benefit of use of the domain names while in the receivers possession, and from any auction of the domain names that may occur at some point in the future.

43.     Network Solutions has the authority to place on hold status or lock any domain name so it cannot be transferred to another entity from it's current domain name holder. This is often done by Network Solutions in various legal actions, such as in the Uniform Domain Name Dispute Resolution Policy ("UDRP"). UDRP is a means for parties to challenge domain name registrations without filing a court action. UDRP hearings are heard by various Dispute Resolution Service Providers throughout the world. Network Solutions also places domain

names on hold status when Network Solutions is made aware of domain names that are the subject of bankruptcy cases

44.     Applying the accepted legal standard of negligence to this case, that is, what constitutes failure to use reasonable care by the Defendants. That being the failure to do something which a reasonably prudent person would do under like circumstances, a departure from what an ordinary reasonable member of the community would do in the same community. Considering the circumstances of the court proceedings of which the domain names were subject, as property of the receivership. It seems to be more than reasonable and prudent that Network Solutions should have placed all of the ninety domain names Network Solutions transferred to the California receiver on a legal hold or lock status. By doing so Network Solutions could have easily prevented the possibility for any of the domain names being transferred away from the California receiver and proceeding to auction, without the authorization of the California District Court.

45.     The hold status, or any other type of lock status could have been placed on all of the ninety domain names, including the fourteen auctioned domain names, from the date Network Solutions initially transferred to the domain names to the receiver Blacksburg, till days shortly before the loss of the domain names through the NameJet auctions of May of 2010.

46.     Network Solutions may claim the fault in loosing the domain names to an auction unauthorized by the California District Court lies with the receiver Blacksburg, but Network Solutions knowing that the domain names were the subject of ongoing court proceedings, and that a domain name holder may loose a domain name by not properly re-registering the domain name is even more reason why the reasonable and prudent action would have been for Network Solutions to place the domain names on hold or lock status, to insure the domain names

continued to be held by the receiver.

47.    Network Solutions is fully aware that thousands of domain names are lost every year by the holders of the domain names through the non renewal of the registrations of the domain names. Some purposely not renewed, but many others unintentionally not renewed or not renewed by misinformation.

48.    Considering the unauthorized transfer and auction of the fourteen domains held by the receiver Blacksburg, Network Solutions it would seem is also negligent for not having in place some type of protocol that would automatically place any domain name on hold or lock status that is the subject of court proceedings. Or at the very least, having in place a protocol which would require a review by Network Solutions legal representatives of any domain name that is the subject of a court proceeding to determine if the domain name should be placed on hold or lock status. Such procedures would be reasonable and prudent actions to take.

49.    Network Solutions may argue Zuccarini as a beneficiary of the receivership of the domain names, a third party beneficiary in their eyes, that Zuccarini has no legal basis to make claims against Network Solutions. Zuccarini does not accept that contention. As Zuccarini files this Complaint against Network Solutions not as a customer of Network Solutions who has entered into an any agreements with Network Solutions, but Zuccarini files this Complaint against Network Solutions as a non-party to any agreement who has been harmed by Network Solutions negligent actions.

50.    Even if it were true, that Zuccarini had no legal standing to files claims against Network Solutions, when the California District Court ordered Network Solutions to transfer Zuccarini's domain names to the California receiver for the benefit of Zuccarini and his creditors, Network Solutions knew that they were entering into a contractual agreement they could not

honor. That they could not honor from Network Solutions position, as a third party beneficiary Zuccarini could not contest any actions that affected the disposition of the domain names. This circumstance, if it were true, is even more reason why Network Solutions should have placed the domain names in possession of the California receiver on legal hold or lock status, to assure an unauthorized transfer did not occur, and that Zuccarini and his creditors were protected. This would have been the reasonable and prudent action for Network Solutions to have taken.

51.     Network Solutions as a domain name registrar accredited by ICANN to registrar domain names to consumers on the Internet is required by ICANN to follow the regulations as stated in the Registrar Accreditation Agreement it has with ICANN. Within that agreement, Section 3. states the Registrar shall abide by applicable laws and governmental regulations. *3. REGISTRAR OBLIGATIONS; 3.7 Business Dealings, Including with Registered Name Holders. 3.7.2 Registrar shall abide by applicable laws and governmental regulations.*

52.     Network Solutions by not abiding by the applicable laws concerning negligence violated of their ICANN Registrar Accreditation Agreement and specifically exhibited negligent and reckless behavior in it's actions in not placing the fourteen domain names previously held by the receiver Blacksburg and auctioned by NameJet on legal hold or lock status.

53.     As Network Solutions places domain names in legal actions, such as UDRP hearings and bankruptcy proceedings on legal hold or lock status, actions in which third party beneficiaries are parties to the actions, there is no legitimate reason why domain names placed in receiverships are not given the same protections.

54.     Network Solutions negligent and reckless behavior has caused damage to Zuccarini and he should be compensated for those damages.

12

## SECOND CAUSE OF ACTION
## CONCURRENT NEGLIGENCE
### (Against Defendant NameJet)

55.     NameJet in auctioning the fourteen domain names without any regard to their legal status is in concurrent negligence in aiding the loss of the domain names from the receiver Blacksburg, and in detriment to Zuccarini and his creditors.

56.     NameJet should not be immune from the laws and policies in place for real life auction houses, in that NameJet should have in place protocol to insure or verify in the best way they can that the property, the domain names they auction are in acceptable legal standing to be auctioned, and not the subject of court proceedings, or even stolen or illegally obtained.

57.     It is Zuccarini's believe that  NameJet has no such policies or procedures in place to verify the legal standing of any domain names they auction. That verifying the best they could the legal standing any domain name before it is auctioned would be a reasonable and prudent action. By not having such procedures, NameJet's behavior is negligent and reckless.

58.     NameJet's concurrent negligence aided Network Solutions negligent and reckless behavior and has caused damage to Zuccarini and he should be compensated for those damages.

## THIRD CAUSE OF ACTION
## CONCURRENT NEGLIGENCE
### (Against Defendant ICANN)

59.     ICANN, as the corporation that manages the Internet Domain Name System,  in addition to accrediting and overseeing the actions and performance of domain name registrars, is in concurrent negligence in aiding the loss of the domain names from the receiver Blacksburg, in detriment to Zuccarini and his creditors.

60.     ICANN maintains a Registrar Accreditation Agreement with Network Solutions.

Within that agreement ICANN states it's obligation to its responsibilities of the agreement in to exercise its responsibilities. Section 2.; *2. ICANN OBLIGATIONS; 2.3 General Obligations of ICANN. With respect to all matters that impact the rights, obligations, or role of Registrar, ICANN shall during the Term of this Agreement: 2.3.1 exercise its responsibilities in an open and transparent manner;.*

61.    Within Registrar Accreditation Agreement, Section 3. states the Registrars shall abide by applicable laws and governmental regulations.*3. REGISTRAR OBLIGATIONS; 3.7 Business Dealings, Including with Registered Name Holders. 3.7.2 Registrar shall abide by applicable laws and governmental regulations.*

62.    ICANN by not fulling it's responsibilities in overseeing the actions of Network Solutions in not abiding by the applicable laws of negligence as Network Solutions is required to do under section 3.7.2 of the Registrar Accreditation Agreement, ICANN's behavior was in this case one of concurrent negligence and also reckless.

63.    ICANN is also in concurrent negligence for not having protocol in place to require domain name registrars to place on hold or lock status any domain name that is the subject of court proceedings, or at the very least to have protocol in place to require domain name registrars to review any domain name that is the subject of court proceedings to determine if the subject domain name should be placed on hold or lock status.

64.    ICANN may also claim that Zuccarini can not take action against ICANN as a third party beneficiary. Zuccarini does not accept that contention. Zuccarini files this action as a party who has not entered into any agreement with ICANN or Network Solutions, but Zuccarini files this action as a non-party to any agreement who has been harmed by ICANN's negligent and reckless behavior.

65.     ICANN in approving the Uniform Domain Name Dispute Resolution Policy in October 24, 1999, recognized that third parties had rights to contest the ownership of domain names and that those rights should be protected. There is no legitimate reason why the rights of third parties in receiverships are not also recognized and protected by ICANN.

66.     ICANN's concurrent negligence aided Network Solutions negligent and reckless behavior and has caused damage to Zuccarini and he should be compensated for those damages.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Against Defendants Network Solutions and NameJet)

67.     Through the behavior described above, Network Solutions and NameJet have received money belonging to Zuccarini and his creditors.

68.     Network Solutions and NameJet have reaped substantial profit by their negligent and reckless behavior and disregard for what should have been reasonable and prudent actions under the circumstances presented. Ultimately this resulted in Network Solutions' and NameJets' wrongful receipt of profits and injury to Zuccarini and his creditors. Network Solutions and NameJet have benefited from the receipt of such money that it would not have received but for their negligence.

69.     As a direct and proximate result of Network Solutions' and NameJets' misconduct as stated above, Network Solutions and NameJet have been unjustly enriched.

70.     Under the principles of equity and good conscience, Network Solutions and NameJet should not be permitted to keep the money belonging to Zuccarini and his creditors which Network Solutions and NameJet have unjustly received as a result of their actions.

15

## REQUEST FOR RELIEF

WHEREFORE, Zuccarini requests that the Court enter an order or judgment against the Defendants as follows:

71.  Adjudge and decree that Defendants have engaged in the conduct alleged herein;

72.  For compensatory damages for the fourteen domain names auctioned by NameJet, known at this time to be more than $80,000, with an exact to be determined by discovery.

73.  For punitive damages of $500,000 for each Defendant;

74.  For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

75.  Any and all such other and further relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

76.  Zuccarini hereby requests a jury trial on all issues raised in this Complaint.

Respectfully submitted, this 14th day of February, 2011.

By: _____

JOHN ZUCCARINI, Pro Se
190 SW Kanner Highway
Stuart, FL  34997
(772) 631-3887
raveclub@comcast.net

# Exhibit A

Declaration of Karl Kronenberger in Support of DS Holdings'
Application for Appointment of Receiver

**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Henry M. Burgoyne III (Bar No. 203748)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

Attorneys for Assignee DS HOLDINGS, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **OFFICE DEPOT, INC.,** a Delaware corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. C-06-80356-Misc.<br><br>**DECLARATION OF KARL S. KRONENBERGER IN SUPPORT OF DS HOLDINGS' APPLICATION FOR APPOINTMENT OF RECEIVER** |
| **DS HOLDINGS, LLC,** a Colorado limited liability company,<br><br>            Assignee,<br><br>    vs.<br><br>**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>            Defendants. | |

I, Karl S. Kronenberger declare as follows:

1.    I am an attorney admitted to practice in the State of California and the United

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Holdings with a list of twenty-six (26) domain names that Zuccarini had registered with Joker.com. I examined each of the registration records for these twenty-six domain names, and confirmed that all of the domain names are registered to "John Zuccarini."

### Zuccarini's Domain Name Holdings

28.     Based on the information set forth above, and the exhibits attached to this Declaration, Exhibit N sets forth the complete and accurate listing of all domain name registrations held by Zuccarini, known to DS Holdings at this time.

### Communications with Domain Name Registrars

29.     After DS Holdings obtained its Writ of Execution against Zuccarini, I initiated communications with the third party registrars at issue here, and in particular, with Michael Mauseth  of the general counsel's office of Network Solutions.  Mr. Mauseth made clear to me that Network Solutions would not change the WHOIS information or otherwise transfer any of Zuccarini's domain name to the United States Marshal or DS Holdings absent a court order directing them to do so or the appointment of the United States Marshal as a receiver for Zuccarini's domain names.

### Coordination with the U.S. Marshal Service re: Procedure for Public Auction

30.     I coordinated with the U.S. Marshal Service in order to confirm that the particular public auction process proposed by DS Holdings is the appropriate process for this matter. The U.S. Marshal instructed DS Holdings that the correct procedure in this matter is to obtain an order from the Court transferring the domain name holdings to DS Holdings, for a public auction under the direction of the U.S. Marshal.

//

//

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Case No. C-06-80356-Misc.                    8         **KRONENBERGER DECL. ISO APP. FOR APPOINTMENT OF RECEIVER**

Case3:06-mc-80356-SI   Document20   Filed06/25/07   Page9 of 9

1

2   I declare under penalty of perjury under the laws of the United States of America

3   that the foregoing is true and correct.

4   DATED: June 25, 2007.

5                                                    Karl S. Kronenberger

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Case No. C-06-80356-Misc.            9        **KRONENBERGER DECL. ISO APP. FOR
                                              APPOINTMENT OF RECEIVER**

# Exhibit B

List of the fourteen domain names auctioned by NameJet

# List of the fourteen domain names auctioned by NameJet

| Domain Names | Auctioned Price |
|---|---|
| 1.  govermentgrants.com | $53,022.00 |
| 2.  usgoverment.com | 4,950.00 |
| 3.  govermentgrant.com | 3,950.00 |
| 4.  govermentauction.com | 2,750.00 |
| 5.  govermentauctions.com | 2,500.00 |
| 6.  floridagovernment.com | 2,187.00 |
| 7.  californiagovernment.com | 2,000.00 |
| 8.  perscriptiondrugs.com | 4,100.00 |
| 9.  emailadresses.com | 2,500.00 |
| 10.  britian.com | to be determined |
| 11.  greatbritian.com | to be determined |
| 12.  dictionarys.com | to be determined |
| 13.  wrestleing.com | to be determined |
| 14.  wresteling.com | to be determined |
|  | $77,959.00 |