UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 11-14052-CV – Martinez/Lynch

JOHN ZUCCARINI,

    Plaintiff,

vs.

NETWORK SOLUTIONS, LLC, *et al.*,

    Defendants.
_____/

**DEFENDANTS NETWORK SOLUTIONS, LLC AND NAMEJET, LLC'S
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**

    COME NOW Defendants Network Solutions, LLC ("Network Solutions") and NameJet, LLC ("NameJet"), and hereby move this Court for entry of an Order of sanctions against Plaintiff, John Zuccarini ("Zuccarini"), pursuant to Fed. R. Civ. P. 11(b) and in support thereof, state as follows:

**I.    INTRODUCUTION**

    Litigation is not a game.  The federal courts are not a vehicle for litigants, whether *pro se* or represented, to harass others by filing frivolous claims which wholly lack any conceivable merit under the existing facts or law.  Zuccarini has litigated, or attempted to litigate, various versions of the same claims presented here, arising out of the same facts and against the same parties, in no fewer than three separate jurisdictions—California, Florida and Virginia.  Thus far, he has been unsuccessful on all

1

counts and has been warned by at least one federal court that if he continued to file frivolous motions or appeals he could be subject to sanctions under Rule 11.  Because of Zuccarini's numerous, meritless filings, Network Solutions and NameJet have been forced to defend themselves against multiple suits—spending thousands of dollars in attorneys' fees and expenses and wasting valuable resources in the process.  Rule 11 sanctions in this matter are appropriate to deter future abusive litigation that may be contemplated by Zuccarini, and to compensate Network Solutions and NameJet for the amounts the have incurred in responding to the instant matter.

**II.     PERTINENT FACTS**

This case began its tortured history in the United States District for the Northern District of California (the "California District Court").  *See Zuccarini v. NameJet, Inc.,* 2:10-cv-14178-KMM.  The background was discussed by the Ninth Circuit in *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696 (9th Cir. 2010):

> In December 2000, Office Depot obtained a judgment against Zuccarini under the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d), arising out of Zuccarini's registration of the domain name "offic-depot.com."  Office Depot was unable to collect on the judgment and eventually assigned the judgment to DSH.

*Id.* at 698.

> DSH sought to levy upon some of the other domain names owned[1] by Zuccarini.  DSH registered the judgment in the district court for the Northern

---

[1] NameJet takes issue with the California District Court's use of the term "owned" in connection with a domain name registration, as it connotes that the domain name is property – which it is not. *See, e.g., Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 529 S.E.2d 80 (2000).

2

> District of California. DSH then obtained a preservation order from the district court and engaged in discovery.

*Id.*

> DSH filed a request in the district court for a turnover order to compel the registrars of certain ".com" domain names owned by Zuccarini to transfer ownership to DSH. The district court denied the request, holding that, under California Civil Procedure Code § 699.040, it could not order third parties to turn over property. DSH then moved for the appointment of a receiver who would obtain and sell the ".com" domain names in question and would use the proceeds to satisfy the judgment. The district court granted the motion to appoint a receiver.

*Id.* at 699; *see also Office Depot, Inc. v. Zuccarini*, 621 F. Supp. 2d 773 (N.D. Cal. 2007) (order appointing receiver). On November 14, 2007, the California District Court entered an Order requiring Network Solutions and other domain name registrars to "transfer control of the Zuccarini domain names to" a receiver, Michael Blacksburg. A copy of this Order is attached hereto as *Exhibit 1*.[2] Network Solutions obeyed the Order, and transferred control of the domain names registered with it to Blacksburg. Blacksburg subsequently declined to renew the registration of 14 of the transferred domain names. As a result, and consistent with Blacksburg's agreement with Network Solutions, the 14 non-renewed domain names were auctioned to third parties using NameJet's auction platform.

Zuccarini vociferously, though unsuccessfully, fought the transfer of the domain names to the receiver in the California District Court and the United States Court of Appeals for the Ninth Circuit. He then sought – unsuccessfully – injunctive relief against Network Solutions and NameJet in the

---

[2] For clarity, Network Solutions has attached to the Order the "Exhibit N" referenced in the Order, although not attached to the Order itself when entered by the Court.

California District Court, despite the fact that neither was a party to the case pending in that Court. Having lost in the California courts, Zuccarini cast his lot in this Court. On July 7, 2010, Zuccarini filed an action in this Court against Network Solutions and NameJet, among others, for breach of contract, conversion, and declaratory and injunctive relief (the "First Florida Action"). Incredibly, Zuccarini filed the First Florida Action because Network Solutions and other domain name registrars *obeyed* the Order of the California District Court requiring the transfer of the domain names to the receiver. A copy the Complaint and Amendment thereto filed in the First Florida Action are attached hereto as *Exhibit 2*.

This Court transferred venue in the First Florida Action to the United States District Court for the Eastern District of Virginia (the "Virginia District Court"), where the case was styled *Zuccarini v. Network Solutions, Inc., et al*, Civil Action No. 1:10cv1327. There, the Honorable Leonie M. Brinkema dismissed with prejudice all of Zuccarini's claims, entered judgment for the defendants, and warned Zuccarini that any frivolous appeal could result in sanctions under Fed. R. Civ. P. 11. A true and correct copy of a January 14, 2011 Order is attached hereto as *Exhibit 3*. Moreover, during the hearing, Judge Brinkema stated:

> All right. And all these defendants did, Mr. Zuccarini, is comply with a federal court order, which they have to or they'd be in contempt of court; and you went ahead then and filed a suit against them alleging various creative theories, including breach of contract where there were no contracts in my view that would be at all enforceable; conversion, which can't occur unless there's an unlawful act, and when you're acting in accordance of a court order, there's nothing unlawful about that; and you request a civil conspiracy in which there's absolutely no evidence nor could there be of a civil conspiracy; and requesting declaratory and injunctive relief; complete waste of time, costing these attorneys and their clients money to have to defend, and you can see where I'm going with this.

4

> I'm granting the motions to dismiss with prejudice as to all claims in this lawsuit, and I'm putting you on what is equivalent to a judicial Rule 11 notice. You've got a right to appeal this decision. I think you're fairly sophisticated in the ways of the law. If you're going to file a notice of appeal, that has to be within 30 days of today's date. I'm putting on the record that in my view, an appeal in this case would be sanctionable, and I would strongly recommend to the Court of Appeals that if they agree with this Court's view of this case and they were to deny the appeal or dismiss it, that the Court seriously consider imposing sanctions, those sanctions to consist of the expenses to which the defense counsel would be put in having to defend any kind of an appeal.

A copy of the transcript of the January 19, 2011 proceedings is attached hereto as *Exhibit 4*.

Unswayed by the Virginia District Court's admonition, Zuccarini filed in that Court a Motion for Relief pursuant to Rule 60(b) based upon the very same theories of negligence against Network Solutions and NameJet that he alleges in the instant matter. Finding the new filings "as equally groundless and devoid of merit as his original Complaint," Judge Brinkema denied Plaintiff's motion without briefing or oral argument. A copy of a January 19, 2011 Order is attached hereto as *Exhibit 5*. Judge Brinkema further held that "even if Zuccarini's arguments that defendants were somehow negligent had any merit, those arguments should have been raised during the litigation in the Northern District of California, or on direct appeal to the United States Court of Appeals for the Ninth Circuit, not through a collateral attack in an entirely new lawsuit." *See Exhibit 5*.

Zuccarini refused to heed Judge Brinkema's Order and, hoping for a different result in this Court, has filed yet another suit against Network Solutions and NameJet based upon identical facts and circumstances as those raised in the First Florida Action —namely, the transfer to the receiver and

subsequent auction of 14 domain names — as well as upon the same theories of negligence that were held to be barred by Judge Brinkema's Order.

## III.   APPLICABLE LAW AND ARGUMENT

Rule 11 allows a court to impose sanctions on a party who has presented a pleading, motion or other paper to the court without evidentiary support or for "any improper purpose." *See* Fed. R. Civ. P. Rule 11 (b).  An improper purpose may be inferred from the filing of frivolous papers. *See In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990).  The standard is an objective one; whether a reasonable party would have acted in a particular way.  *See Chambers v. NASCO Inc.*, 501 U.S. 32, 47 (1991).  "The reasonableness of the conduct involved is to be viewed at the time counsel or the party signed the document alleged to be the basis of the Rule 11 sanction."  *Sussman v. Salem, Saxon and Nielsen, P.A.*, 150 F.R.D. 209, 213 (M.D. Fla. 1993).  The purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001); *see also, Sussman*, 150 F.R.D at 213 ("this Court recognizes Rule 11's objectives, which include: (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management").

In the Eleventh Circuit, "three (3) types of conduct warrant Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on legal theory that has no reasonable chance of success and that cannot be advanced as reasonable

6

argument to change existing law; and (3) when a party files a pleading in bad faith or for improper purpose." *Didie v. Howes*, 988 F.2d 1097 (11th Cir. 1993) (citations omitted). Rule 11 sanctions are **mandatory** when a signed paper is submitted to the court under the aforementioned conditions. *See Schramek v. Jones*, 161 F.R.D. 119, 122 (M.D. Fla. 1995) (emphasis added).

Like an attorney, "[a] pro se litigant is subject to Rule 11, which imposes sanctions for the filing of baseless or frivolous lawsuits." *Id*. By way of example, in *Merrigan v. Affiliated Bankshares of Colorado, Inc.*, 775 F. Supp. 1408 (D. Colo. 1991), a case cited with deference in *Schramek*, the District Court found that Rule 11 sanctions against *pro se* litigants were warranted where the filings made by the plaintiffs had no basis under fact or law, were not well-grounded for a good faith argument for an extension of the law, and had the improper purpose of attempting to delay or relitigate other actions. In *Merrigan*, the plaintiffs filed an initial lawsuit in which judgment was entered against them and which the failed to appeal. *Id.* at 1413. Plaintiffs subsequently were sued for legal fees incurred in the first case and they failed to appear at trial and a judgment was entered against them. *Id.* In three separate civil suits, plaintiffs sought to set aside the judgment and recover damages. *Id.* They were unsuccessful on all fronts. *Id.* In dismissing the cases, the court noted that further attempts to litigate the same matter are "frivolous and groundless." *Id.*

Failing to heed the court's warning, the plaintiffs in *Merrigan* filed suit in federal court on the same issues. *Id.* The District Court found the case to be frivolous and without a basis in law or fact, with plaintiffs attempting to litigate issues previously dismissed in the state court. Accordingly, the court found the imposition of sanctions to be appropriate under Rule 11.

7

Although Rule 11 specifically contemplates sanctions in the form of an award of attorneys fees, the award of fees "is but one of several methods of achieving the various goals of Rule 11." *See Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). In fact, Rule 11 states that "[t]he sanction may include nonmonetary directives." *See* Rule 11(c)(4). Numerous courts have held that injunctive sanctions are appropriate to regulate the activities of abusive litigants. *See Christensen v. Ward*, 916 F.2d 1485 (10th Cir. 1990); *see also Tripoti v. Beamon*, 878 F.2d 351, 353 (10th Cir. 1989); *Merrigan*, *supra*; *In re Green*, 669 F.2d 779, 781-85 (D.C. Cir.1981); *Franklin v. Murphy*, 745 F.2d 1221, 1229-36 (9th Cir. 1984); *Ruderer v. United States*, 462 F.2d at 899 n.2 (listing cases); *In re Martin-Trigona*, 737 F.2d 1254, 1264-74 (2d Cir. 1984).

Rule 11 does not enumerate factors a court should consider in deciding the appropriate sanction for a Rule 11 violation. *See* Fed. R. Civ. P. 11 Advisory Committee Notes (1993). Rather, a trial court has broad discretion to choose the nature and the amount of the sanction to achieve the deterrent purposes of Rule 11. *See DiPaolo v. Moran*, 407 F.3d 140, 146 (3rd Cir. 2005).

In the instant matter, monetary sanctions, together with injunctive sanctions enjoining Zuccarini from filing future litigation against Network Solutions and NameJet are appropriate. Despite being *pro se*, Zuccarini is a seasoned litigation veteran who has continued to attempt to litigate the same claims, albeit sometimes under what he contends are different theories, against the same defendants – over and over and over again. These claims already have been adjudicated by the California District Court, the Ninth Circuit, and the Virginia District Court to have no basis under fact or law and to be utterly

frivolous.

Zuccarini's actions in the filing of numerous frivolous pleadings in numerous jurisdictions are exactly the nature of conduct that Rule 11 was designed to remedy. Moreover, Zuccarini was warned clearly and unequivocally by the Virginia District Court that his repeated attempts to present these claims to that Court or any frivolous appeal could subject him to sanctions under Rule 11. Zuccarini undoubtedly can afford the imposition of sanctions that would include the attorneys' fees incurred by Network Solutions and NameJet in this matter. However, given his past and persistent conduct, it is unlikely that such a sanction alone would deter Zuccarini from filing future claims against Network Solutions and NameJet arising from the transfer and sale of the 14 domain names at issue in this matter, or whatever other claims may occur to Zuccarini, regardless of the factual or legal basis therefore.

While "[l]itigiousness alone will not support an injunction restricting filing activities…injunctions are proper where the litigant's abusive and lengthy history is properly set forth." *Tripati*, 878 F.2d at 353. As the United States District Court for the District of Columbia has stated:

> Plaintiff's continual attempts to relitigate his unsuccessful claims are highly disruptive. Plaintiff may believe that a new judge will overlook the readily apparent similarity of each new complaint to its predecessors. Alternatively, he may think that a judge will ignore the unanimous dismissals that have greeted plaintiff's actions and reject the sound notions on which those dismissals were based. Either theory would be incorrect. Instead, plaintiff's litigiousness forces the conclusion that he resorts to legal process regardless of the legitimacy of his claims….

*Sparrow v. Reynolds*, 646 F. Supp. 834, 839 (D.D.C. 1986).

Zuccarini no longer should be allowed to cause Network Solutions and NameJet to incur

9

thousands of dollars in fees and costs necessary to respond to his frivolous claims. Moreover, in light of the strong likelihood that he will continue to file future frivolous actions, generating more years of litigation and expense, to the detriment of all parties and the courts, injunctive sanctions are particularly appropriate.

IV. CONCLUSION

For the foregoing reasons, Network Solutions and NameJet respectfully request that this Court enter an Order of sanctions against Zuccarini and (a) award to Network Solutions and NameJet their reasonable attorneys' fees, costs and expenses incurred in responding to the instant action; (b) enjoin Zuccarini from filing any civil action against either Network Solutions, LLC or NameJet, LLC based upon any of the legal or factual claims alleged by Zuccarini in *Zuccarini v. NameJet, Inc.,* 2:10-cv-14178-KMM, *Zuccarini v. Network Solutions, Inc., et al*, Civil Action No. 1:10cv1327, and/or the instant action; (c) enjoin Zuccarini from filing any civil action or otherwise seeking relief[3] against either Network Solutions or NameJet in any court without an order from an appropriate federal judicial officer certifying that the claims are not frivolous; and (d) for such other and further relief that this court deems just and proper.

---

3 The breadth suggested here is warranted, as Zuccarini sought, in the California District Court, a temporary restraining order against Network Solutions and NameJet in an action in which they were not even parties.

       /s/  Jamie M. Roos
Jamie M. Roos
Florida Bar No. 0694231
Stein, Sperling, Bennett, De Jong,
  Driscoll & Greenfeig, P.C.
25 West Middle Lane
Rockville, Maryland  20850
Tel.:   (301) 838-3326
Fax:    (301) 354-8326
jhertz@steinsperling.com
Attorneys for NameJet, LLC and Network Solutions, LLC

### RULE 11(c)(2) CERTIFICATE

Pursuant to Rule 11(c)(2), I hereby certify that on the 20th day of April, 2011, I served by email and first class mail, postage prepaid, upon Plaintiff, John Zuccarini, a copy of the foregoing Defendants Network Solutions, LLC and NameJet, LLC's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, together with a letter stating as follows:

> Pursuant to Fed. R. Civ. P. 11(c) (2), attached is a service copy of the Fed. R. Civ. P. 11 Motion for Sanctions of Network Solutions, LLC and NameJet, LLC ("Motion for Sanctions") which we are providing to you.  We demand that you dismiss with prejudice your claims against Network Solutions, LLC and NameJet, LLC within 21 days of the date of this letter.  If you refuse to dismiss your claims against Network Solutions, LLC and NameJet, LLC, than we will be forced to file the attached Motion for Sanctions with the Court.

      /s/ Jamie M. Roos
Jamie M. Roos
Timothy B. Hyland